IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| E.R.M.,<br><br>      Plaintiff,<br><br>      v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>      Defendant. | Civ. No. 22-6012 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**APPEARANCES**

Bross & Frankel, P.A.
Jennifer L. Stonage
725 Kenilworth Avenue
Suite 2
Cherry Hill, New Jersey 08002

    *On behalf of Plaintiff*

Tara A. Czekaj
Special Assistant United States Attorney
Office of Program Litigation, Office 3
Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant*

**RENÉE MARIE BUMB**, Chief United States District Judge:

    This matter comes before the Court upon an appeal by Plaintiff E.R.M. from a denial of social security disability benefits. For the reasons set forth herein, the Court

will vacate the decision of the Administrative Law Judge ("ALJ") and remand for proceedings consistent with this Opinion.

I.   PROCEDURAL HISTORY

On January 2, 2018, Plaintiff filed an application for Social Security Disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning May 13, 2015. [R. at 14.] The claims were first denied on May 19, 2018, and again denied upon reconsideration on August 31, 2018. [R. at 12.] On October 24, 2018, Plaintiff filed a written request for a hearing before an ALJ. [*Id.*] That hearing took place on April 22, 2021. [*Id.*] Plaintiff was represented by an attorney at that hearing, at which the ALJ heard testimony from Plaintiff and a vocational expert. [*Id.*]

II.   STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id*. Otherwise, the ALJ moves on to step two.

3

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019).

### III.   FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was born on June 14, 1970, was 42 years old on the alleged onset date and 50 years old at the time of her administrative

4

hearing on April 22, 2021. [*See* R. at 330.] Plaintiff met the insured status requirements of the Act through December 31, 2020, meaning that she had to establish disability on or before that date to be entitled to benefits. [*See* R. at 12.]

### A. Plaintiff's Educational Work History

Plaintiff attended and graduated high school and attended but did not graduate from college. [R. at 19, 62.] Prior to the alleged onset date, Plaintiff last worked as an underwriting clerk at her family's business primarily performing office tasks such as filing, faxing, typing, and answering the phone. [R. at 19.] The ALJ found that she had past relevant work as a semi-skilled underwriting clerk [R. at 22.]

### B. Plaintiff's Medical History

In her initial application for disability insurance, Plaintiff stated that she suffered from: hypogammaglobulinemia, fibromyalgia, migraine headaches, irritable bowel syndrome ("IBS"), bipolar disorder, immune disorder IgA, IgG and IgM deficiencies, post-traumatic stress disorder, chronic fatigue, depression, anxiety, chronic neck and back pain, and osteoarthritis/degenerative disk disease. [R. at 330, 338.] Since the date last insured, Plaintiff has also suffered from asthma, alcohol use disorder, cocaine use disorder, lumbar facet joint syndrome and obesity. [R. at 15.]

## IV. THE ALJ'S DECISION

The ALJ found that Plaintiff was not disabled. At step one, the ALJ determined that Plaintiff had not engaged in gainful activity during the relevant period of May 13, 2015, through December 31, 2020. [R. at 14–15.]

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, chronic pain syndrome, lumbar facet joint syndrome, and obesity. [R. at 15.] The ALJ found, however, that Plaintiff's "migraines/cluster headaches, degenerative disc disease of the lumbar spine, primary generalized osteoarthritis, asthma, [IBS], hypogammaglobulinemia, IgA deficiency, IgG deficiency, IgM deficiency, alcohol use disorder, and cocaine use disorder constitute[d] non-severe impairments." [*Id.*]

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [R. at 18.]

At step four, the ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) except with only occasional climbing, crouching, crawling, stooping, and kneeling." [*Id.*] Although the ALJ found that although the combination of Plaintiff's severe and non-severe impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence." [R. at 20.] The ALJ then found that Plaintiff could perform her past relevant work as an underwriting clerk. [R. at 22.] That finding was consistent with the testimony of the vocational expert. [*Id.*] Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date last insured. [R. at 23.]

V.      DISCUSSION

Plaintiff now challenges the ALJ's decision on three grounds. First, Plaintiff argues that the ALJ erred in finding her migraine, IBS, mental health and lumbar degenerative disc disease/generalized osteoarthritis impairments non-severe. Plaintiff further argues that the ALJ compounded that error by failing to include RFC limitations based on these impairments (whether severe or non-severe). [Pl.'s Br. at 15–25.] Second, she argues that the ALJ failed to consider a third-party statement of A.S., Plaintiff's 16-year-old daughter. [*Id.* at 25–26.] Finally, Plaintiff argues that the ALJ "erred in her rejection of the opinions of [Doctors] Ronald Karpf and [] George Knod," who each prepared psychological consulting reports. [*Id.* at 26–29.] The Court addresses each argument in turn.

   A.   **Non-Severe Impairments and RFC Limitations**

        1.   *Non-Severe Impairments*

             a.   *Migraines*

There was substantial evidence for the ALJ to conclude that Plaintiff's migraines were non-severe. The ALJ decision reviewed the medical evidence in the record which repeatedly characterized Plaintiff's migraines as "non-intractable." [R. at 15, 862, 865–66, 869, 871, 873.] In other words, Plaintiff's headaches were manageable. This is contrary to Plaintiff's testimony that her migraines were intractable and accompanied by nausea, vomiting, and slurred speech. [R. at 81.] The ALJ did not err in crediting the objective medical evidence over Plaintiff's own

testimony. *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (explaining that an ALJ has broad discretion to evaluate Plaintiff's subjective complaints); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) ("[A]llegations of pain and other subjective symptoms must be consistent with objective medical evidence.").

### b. *IBS*

There was likewise substantial evidence for the ALJ to conclude that Plaintiff's IBS was non-severe. As the ALJ explained, while treatment notes consistently mentioned Plaintiff's IBS diagnosis [*see, e.g.*, R. at 472, 474–75, 507, 510, 514–15], the medical record contained little medical evidence for the ALJ to conclude that Plaintiff's IBS prevented her from performing work-related activities. 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."); *id* § 404.1522 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). In fact, the record indicates—and the ALJ noted—that Plaintiff's IBS-related symptoms were at worst on-and-off. Sometimes Plaintiff reported gastrointestinal or abdominal pain, but sometimes she did not. [*Compare* R. at 510, *with* R. at 475; *see also* R. at 581 (noting that "[p]atient offers no significant abdominal pain"). Accordingly, the ALJ was entitled to conclude that Plaintiff's IBS was non-severe and would not limit her ability to do basic work.

c.   *Mental Health*

When assessing the severity of a claimant's mental health impairments, the Act requires an ALJ to rate the claimant's degree of limitation in four broad functional areas: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ properly engaged with this standard adequately explaining why Plaintiff's mental impairment resulted in only mild limitations as to the four functional areas.

First, the ALJ cited medical evidence characterizing Plaintiff's memory functions as "normal" despite other evidence noting below average long-term memory and slightly below average short-term memory. [R. at 16–17 (citing R. at 503, 513, 529, 552, 566, 604, 609.] Second, the ALJ explained that there was no medical evidence suggesting Plaintiff had difficulty interacting with others even though Plaintiff denied visiting socially with others. [R. at 16–17.][1] Third, the ALJ cited both Doctors Karpf's and Knod's psychological consulting exams, noting Plaintiff's "good concentration" and her adequate performance of serial sevens. [R. at 17 (citing R. at 603–04, 609.] Finally, the ALJ found that Plaintiff could manage herself with mild limitation noting that, although Plaintiff sometimes reported a depressed or anxious mood, "most frequently … treatment notes mentioned the

---

[1] And as Defendant notes, the record is replete with examples of Plaintiff's social interactions with others including her daughter, parents, and speaking to a friend over the phone. [*See* Def.'s Br. at 26–27 (citing R. at 382).]

[Plaintiff] had a normal mood and/or affect on exam." [R. at 17 (citing R. at 503, 513, 529, 552, 566, 582,588, 596, 656, 664, 681, 694, 782–83, 789–90, 846).]

Accordingly, there was substantial evidence to support a conclusion that Plaintiff's mental impairments were non-severe. 20 C.F.R. § 404.1520a(d)(1) (explaining that mild mental impairments generally support the conclusion that impairments are not severe); *D.C. v. Comm'r of Soc. Sec.*, 2021 WL 1851830, at *5 (D.N.J. May 10, 2021) (ALJ's decision that a claimant's depressive disorder was non-severe was supported by substantial evidence where the ALJ adequately considered the four functional areas).

### d.  *Degenerative Disc/Osteoarthritis*

The ALJ clearly identified evidence supporting the conclusion that Plaintiff's spinal impairment symptoms were only mild. Specifically, the ALJ identified an April 19, 2018, lumbar MRI demonstrating only "mild degenerative changes, with no evidence of significant intervertebral disc space narrowing, disc herniation, central canal narrowing, or neural foraminal narrowing at any level" [R. at 15 (citing R. at 591–92)], and a 2020 lumbar MRI showing "only minimal left paracentral lateral L5-S1 disc protrusion with just slight mass effect, and no central canal stenosis, disc space narrowing, or malalignment. neural foraminal narrowing at any level," [R. at 15 (citing R. at 851–52)]. Therefore, the ALJ did not err in finding Plaintiff's spinal impairments non-severe.

Accordingly, the Court will not remand on the basis of any of the ALJ's non-severity findings.

### 2. *RFC Limitations*

As a corollary to her step two argument, Plaintiff also argues that the ALJ erred in failing to include RFC limitations regarding her migraine, IBS, mental health, and spinal impairments. [Pl.'s Br. 15–18, 20–23.] The Court will remand given the ALJ's failure to consider the impact of Plaintiff's mental health and IBS impairments on the RFC.

"An RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that the ALJ has not deemed to be severe at step two." *Rosario v. Kijakazi*, 2022 WL 2714010, at *10 (D.N.J. July 13, 2022) (citing 20 C.F.R. § 404.1545(a)(2)). Therefore, an error at step two is only harmless where the ALJ has considered non-severe medically determinable impairments in the RFC determination, and the error would not otherwise impact the outcome of the case. *See Jennifer V. v. Comm'r of Soc. Sec.*, 2022 WL 1044966, at *5 (D.N.J. Apr. 7, 2022) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005)).

Here, the ALJ considered how two of the non-severe impairments listed above impacted Plaintiff's ability to work. The ALJ's RFC considered and specifically imposed limitations with respect to Plaintiff's spinal impairments. [*See* R. at 20 (limiting Plaintiff to "light work" given complaints of back pain).] And the ALJ also considered and rejected limitations with respect to Plaintiff's migraine impairment based on the medical evidence that Plaintiff's migraines were non-intractable. [*See* R. at 21.]

11

But there is no mention in the ALJ's RFC analysis as to Plaintiff's non-severe IBS and mental health impairments. Without specific consideration of how these impairments affect the RFC analysis, the Court is not convinced that the ALJ fully considered and appreciated Plaintiff's IBS and mental impairments in formulating Plaintiff's RFC. *Jennifer V.*, 2022 WL 1044966, at *5 (holding that remand is appropriate where the ALJ fails to explicitly reference impairments in the RFC analysis itself). In her step two severity analysis with respect to Plaintiff's mental health impairment, the ALJ states that the RFC "reflects the degree of limitation the undersigned has found in the [] mental function analysis." [R. at 17.] But, as in *Jennifer V.*, the RFC analysis contains no reference to Plaintiff's mental health impairment at all. *See Jennifer V.*, 2022 WL 1044966, at *5. "In the absence of any reference to Plaintiff's mental impairments in the RFC analysis, the Court is not satisfied with the ALJ's conclusory statement at step two that she considered them in the RFC analysis." *Id.*; *see also Rosario*, 2022 WL 2714010, at *11 (D.N.J. July 13, 2022) (remanding for ALJ's failure to properly consider plaintiff's mild to moderate mental impairments in the RFC analysis); *Curry v. Comm'r of Soc. Sec.*, 2017 WL 825196, at *4 (D.N.J. Mar. 2, 2017) (same).[2]

---

[2] Defendant argues that in most cases, mild, non-severe mental impairments at step two do not require limitations for purposes of a claimant's RFC. [Def.'s Br. at 28–29 (collecting cases).] That may be so. But it is for the ALJ, not this Court, to make such a finding. Here, the ALJ did not discuss Plaintiff's mental health or IBS impairments at all in the RFC analysis.

While the Court is mindful that there might be substantial overlap between an ALJ's severity and RFC findings, the analyses are not the same. Just because an impairment might be non-severe, it does not necessarily mean that a claimant can perform her past work at the calculated RFC. *See Rosario*, 2022 WL 2714010, at *11. Of course, evidence considered in the severity analysis may be relevant in determining an RFC. Here, for example, the ALJ rejected limitation with respect to Plaintiff's non-severe migraine impairment because the medical evidence demonstrated that Plaintiff's migraine complaints were unsupported by the record. [*See* R. at 21.] But the Court will not independently make such an inference here with respect to Plaintiff's IBS and mental impairments given the ALJ's total silence. *See Rosario* (declining to "independently determine" impact of impairment on plaintiff's RFC); *see also Curry*, 2017 WL 825196, at *5. The Court will remand for the ALJ to expressly consider how Plaintiff's IBS and mental health impairments impact her RFC.

### B.    Third-Party Statement of A.M.

Plaintiff argues that remand is needed because the ALJ's decision "contains no evaluation of the third-party statement of A.M., the Plaintiff's daughter." [Pl.'s Br. at 25]. There is no requirement that an ALJ discuss "every tidbit of evidence included in the record" when the ALJ otherwise sufficiently addressed the medical evidence. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *see also Bailey v. Comm'r of Soc. Sec*, 354 F. App'x. 613, 618 (3d Cir. 2009). Moreover, an ALJ only errs in failing to consider evidence when she fails to resolve conflicts created by

countervailing evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Here, A.M.'s third-party statement did not create an evidentiary conflict because it was cumulative of Plaintiff's own testimony which the ALJ did explicitly consider.

Plaintiff notes that A.M.'s third-party statement demonstrated that Plaintiff (i) sleeps for most of the day unless she has a doctor's appointment; (ii) experiences back pain making it difficult for her to sleep and bathe; (iii) does not drive or often leave the house and cannot do so alone due to anxiety; and (iv) suffers from "severe depression." [Pl.'s Br. at 25 (citing R. at 387–94).] But the ALJ's decision considered the substance of these statements through Plaintiff's own testimony. The ALJ noted Plaintiff (i) suffers from poor sleep hygiene, [R. at 19]; (ii) suffers from back pain [R. at 20]; (iii) does not often leave the house and can only drive short distances, [R. at 19]; and (iv) complains of anxiety and depression, [R. at 17]. Still, the ALJ found that the objective medical evidence did not support a disability finding when considering the medical evidence. Accordingly, the Court will not remand for specific consideration of Plaintiff's minor daughter's third-party statement.[3]

### C. Consulting Reports of Doctors Karpf and Knod

In her final argument, Plaintiff asserts that the ALJ improperly discounted portions of the psychological consulting reports of Doctors Karpf and Knod. Specifically, Plaintiff accuses the ALJ of "implementing her own medical

---

[3] At worst, the ALJ's failure to mention the third-party statement was harmless error which does not require remand. *See Crosby v. Barnhart*, 98 Fed. App'x. 923, 926 (3d Cir. 2004) (holding rejection of affidavit harmless because it was duplicative of plaintiff's own testimony which the ALJ considered)

interpretation" of the reports by "reject[ing]" (i) Doctor Karpf's conclusions that "Plaintiff's long-term memory was below average" with "moderate impairments [to] immediate retention and recall" and that "agoraphobia interferes with [Plaintiff's] social judgment"; and (ii) Doctor Knod's conclusions that Plaintiff was "anxious[]" while completing serial [sevens] and that Plaintiff should be "off task during her severe migraine headaches." [Pl.'s Br. at 28.] Neither argument has merit.

With respect to Doctor Karpf's report, the ALJ specifically acknowledged Doctor Karpf's findings that Plaintiff's long-term memory was below average, that she had moderate impairments related to immediate retention and recall, and that she reported experiencing anxiety and anxious and panicked feelings about going outside. [R. at 16–17.] But the ALJ ultimately concluded, as she was entitled to do, that these limitations were either mild or unsupported by the broader medical evidence, including that (i) Plaintiff's concentration was good, [R. at 17]; (ii) her memory capabilities were generally normal, [R. at 16]; and (iii) treatment notes did not reflect any evidence that Plaintiff complained of having anxiety and/or panic about going outside, [R. at 17]. *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) (noting that an ALJ is not required to adopt the entirety of a medical opinion simply because the ALJ finds it persuasive as a whole); *J.L.B. v. Comm'r of Soc. Sec.*, 2022 WL 17039305, at *4 (D.N.J. Nov. 17, 2022) (courts will not re-weigh the record evidence).

With respect to Doctor Knod's report, the ALJ did not "reject" Doctor Knod's finding that Plaintiff was anxious while completing serial sevens. Instead, the ALJ

15

properly contextualized that finding within the report, noting Doctor Knod's overall conclusion that Plaintiff *was* in fact able to adequately perform serial sevens. [R. at 17 (citing R. at 609).] In arriving at Plaintiff's RFC, the ALJ did, however, reject Doctor Knod's conclusion that Plaintiff should be off task during severe migraine headaches. [R. at 21 (citing R. at 607, 609).] But an ALJ may reject medical opinion evidence after weighing it "against other relevant evidence and explain[ing] why certain evidence has been accepted and why other evidence has been rejected." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)). That is exactly what the ALJ did. Finding no support in the medical record for Plaintiff's complaint of severe migraines, the ALJ was entitled to reject Doctor Knod's off-task assessment. [R. at 21; *see also supra* at 7–8.] The Court will not disturb the ALJ's findings with respect to the medical opinion evidence.

## VI.   CONCLUSION

**ACCORDINGLY**, it is on this **16th** day of **October 2023**,

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE THIS CASE.**

                                          s/Renée Marie Bumb
                                          RENÉE MARIE BUMB
                                          Chief United States District Judge